FULL NAME

Florence A. Walker
COMMITTED NAME (if different)

FULL ADDRESS INCLUDING NAME OF INSTITUTION

29910 Rancho California Rd, #306

Temecula-CA. 92591
PRISON NUMBER (if applicable)

X20302

| | |
|---|---|
| **FILED** | |
| CLERK, U.S. DISTRICT COURT | |
| **3/8/2021** | |
| CENTRAL DISTRICT OF CALIFORNIA | |
| BY: _____ **LM** _____ DEPUTY | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | CASE NUMBER  5:21_cv_00419 JFW (KK) |
| Florence Walker                    PLAINTIFF, | *To be supplied by the Clerk* |
| v. | |
| State of California, et all (Dos: 1-10)<br>Calif. Dept of Corrections & REhab-<br>(C.D.C.R) (Dos:2-10)          DEFENDANT(S). | **CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☒ 42 U.S.C. § 1983<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

194
ifp

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes  ☐ No

2. If your answer to "1." is yes, how many? 2 _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

1- DEliberate indifference To A Serious Medical Need
2- Malpracte
3- Negligence
4- Civil Rights Violations To Medical Care
5- US 8th Constitutional amendment Violation

a. Parties to this previous lawsuit:
Plaintiff Florence Walker

Defendants  (Respondant: Mary Lattimore ), California Dept. of Correction and Rehab ( C.D.C.R )

b. Court US District Court ) Central Division

c. Docket or case number 2011-1:09-cv-01602-LJO-GSA

d. Name of judge to whom case was assigned GARY  S.  AUSTIN and Barbara McAulfie

e. Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it
appealed?  Is it still pending?) Deied for failure to state a claim

f. Issues raised: Inadequate Medical Care,    U.S. 8th constitutional amendament violation    Deliberate indifference
a serious Medical Need,   Medial Malpractice and Negligence

g. Approximate date of filing lawsuit: 09-10-2009 and 03-11-2011

h. Approximate date of disposition 11-17-2011 and 03-12-2012

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
occurred? ☒ Yes    ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes    ☐ No

If your answer is no, explain why not

3. Is the grievance procedure completed? ☒ Yes    ☐ No

If your answer is no, explain why not

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff Florence  Walker

(print plaintiff's name)

who presently resides at 29910 Rancho California Rd, #306  Temecula, CA 92591

(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

Cental Calornia Woman's facility from 2008-2014 ( CCWF ) and California Institution of Women's (CIW) 2016-2017

(institution/city where violation occurred)

on (date or dates) _____5/14/08_____ , _____ , _____ .
　　　　　　　　　　　(Claim I)　　　　　　　　(Claim II)　　　　　　　　(Claim III)

**NOTE:**　You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.　Defendant　State of California , et all, Office of the Attorney General _____ resides or works at
　　　　　　　　(full name of first defendant)
　　　　　　　　500 W. Broadway   Ste: 1800
　　　　　　　　(full address of first defendant)
　　　　　　　　State of California- State Government
　　　　　　　　(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Acts done in performance of duties, delegated by the State of California thru State polices implemented via CCR-title 15, by

DEPRIVATION OF RIGHTS UNDER COLOR OF LAW: acts under "color of law" include acts not only done by federal, sta

2.　Defendant　California Dept of Corrections & Rehab ( C.D.C.R ) and Kimberly Cole-officer ____ resides or works at
　　　　　　　　(full name of first defendant)
　　　　　　　　P.O BOX 942883   1515 "S" Sacremento-Ca 942883-0001
　　　　　　　　(full address of first defendant)
　　　　　　　　State agency-Prison's and Cole-Correctional officer
　　　　　　　　(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Correctional division Principal of employee: C/O Kimberly Cole, Corrections officer

3.　Defendant　Dr. F-Hermosia (Physician) and MTA-RN Williams _____ resides or works at
　　　　　　　　(full name of first defendant)
　　　　　　　　23370 Road-22, Chowchilla-Ca 93610
　　　　　　　　(full address of first defendant)
　　　　　　　　Doctor-Hermosia  and Williams-Registered Nurse both for State of California
　　　　　　　　(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

In the capacity as Healthcare providers, at the Central California Women's facility ( CCWF )-Negligent

Deliberate indifference to a serious Medial Need, US 8th constitutional amendment violations-Negligent, refusal to treat.

4.  Defendant  RN-S. Carr, LVN-Salas, Clinical Staff-Issachar _____ resides or works at
(full name of first defendant)

16756 Chino Corona Rd,   Corona-Ca  92880 _____
(full address of first defendant)

Carr-RN,   Salas-LVN,  Issachar-Nursing ( Clinical Staff ) _____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Refusal to treat, Negligence. Deliberate indifference to a serious medical need _____

In their capacity as Healthcare providers at the California Institution for Women ( CIW ) _____

5.  Defendant  Dr. R-Liu and Dr. Marakonda-Physicians of C.D.C.R-State employee _____ resides or works at
(full name of first defendant)

16756 Chino-Corona Rd.  Corona-Ca  928NU _____
(full address of first defendant)

Dr. R-Liu and Dr. Marakonda, both Physicians _____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Deliberate Indifference to a serious medical need and US 8th Constitutional amendment violations _____

Refusal to treat in an emergency compacity. Refusal to treat in Urgent requests for care. _____

## D. CLAIMS*

### CLAIM I

The following civil right has been violated:

Culmination of physical injuries stemming from the refusal By Healthcare providers to acknowledge requests for Medical se.

Failure of Correctional staff to summons Medical care in the face of obvious serious Medical need ( C/O Kimberly Cole-08-(

Refusal of Medical staff ( RN-Williams ) to properly document medical condition and failure to request for further medical in

by PCP in the forwarding CDC-7362 for scheduling with Doctor. Which allowed condition to go from mild, to moderate, to c

medical conditions 1-High Blood Pressure ( 08-2008 ), from time span from 03-14-2008 to 08-08-2008. Triage deficiency.

With full blown open wouds on hands, neck, leg and feet, requiring immediate attention and going to the on-site medical infir

( 805-SNF), as a Medical emergency on 08/04 thru 08/07-2008 repeatedly tried to get emergency treatment. Was seen by a I

On each occassion, He refused to provide any medical treatment, even with open gaping puss oozing wounds. I was not given

Bandages, ointments to prevent further infections, he would not even notify the C-yard ( Where my PCP office was at the tim

of the condition. I was not given anything, told he counldn't help me. " Deliberate indifference to a serious medical need " and

failure to summon medical care, in opposition to Estelle v. Gamble 429 U.S. 97 (1976)-prisoners right to adequate Medical c

In my case I not only did not receive the care I needed, but was diagnosis by the Nurse, this procedure of allowing Nurses to

If I was entitled to medical was based on a policy implemented by the State of California and C.D.C.R. Discovered in 2016

US 8th constitutional amendmant against cruel and unusual punishment

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

1-State of California-CCR-Title-15-formally section 3354 specifically outlined the manner in which inmate patient were to be

In accordance with the policy outlined ( At that time ), I was routinely ignored when trying to get medical attention for the sti

Eczema, which went from mild to acute within a matter of 6 months, that eventually triggered High-Blood pressure (1st addit

2-C.D.C.R- in accordance with its D.O.M (Dept operations Manual )-outlined the procedures for how inmates were to be trea

obtaining medical care. It's the CCR-Title-15 policy, wherein " Deliberate indifference to a serious medical need", prevails ov

3-C/O Kimberly Cole refused to summon Medical care from 08-04-08-05-2008, after repeatedly being asked to contact the cl

the clinic to see plaintiff ( Cole was shown the condition of plaintiff's hand ), but she refused to contact them and refused to i

a pass to go and be seen.

4-MTA-RN, Williams having seen plaintiff on 3 different occasions: March, April and June. failed to forward requests for Dc

She never send the request for Medical care to scheduling for a Doctor's appointment, as was the custom at the time.

5-Dr. F Hermosia ( Seen plaintiff on 08-05, 08-06-2008) refused to treat plaintiff. He saw the gaping open wound in plaintiff'

R-hand, R-foot and L-leg, shin. Was told he could not help me, Was not given any medical provisions to wash, clean, banda;

prevent any further infection from occurring. He refused to notify the PCP on the yard where plaintiff was residing. Was told

..eded to submit co-pay ( C.D.C.R-7362, request for Medical service) form,  All defendants of CCWF and CIW acted in like

*If there is more than one claim. describe the additional claim(s) on another attached piece of paper using the same outline.*

## E.  REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

During the times of plaintiff's need for medical attention, that she was denied or where medical treatment was unnecessarily delay

The stimulus issue ( Eczema ), was not being considered a priority and was brushed off as non-urgent or emergency.  This was also

the time when the C.D.C.R was brought under scrutiny for the failing to provide adequate medical treatment, or treatments that fel

below minimumal level of care.  A 3-Judge panel had been convened (2007) to deal with the issue of Medical in California State p

In 2009, the court ordered the State to submit a plan for decreasing prison population due to the US 8th Constitutional amendmen

violation as it pertained to Medical care. I am one of those prisoner's whose medical care fell way below the minimal level or care.

As a result, I ended up with 2 additional physical injuries: 1-High Blood pressure, developed in 2008 as a result of the culminative

pain and suffering from NOT being treated in a prompt and timely manner. And 2-Supra-Ventricle Tachycardia ( SVT's ), a form

Heart fibrillation ( 2013 ) for the continued issues with delay or lack or treatment for issues related to Eczema.  As a result of havi

to endure sufferings and physical pain, I now have a compromised health level. In 2018, I had to have a Heart ablation. A form of

treatment that became necessary due to the fact that the medications I had been on since 2013, was no longer as affective in treatin

the Supra-Ventricle Tachycardia condition. I have been advised, that if and when the heart palpatations begin again, I more likely

than not will need heart surgery, while in custody  (2013) EKG from Medera Hospital, did indicate I had myocardia injury,  I have

since had a (PE), Pulmanary Emblism  and can no longer work as a result of bad health issues.

Because I have suffered needlessly, unnecessarily, refused to be treated in a emergency capacity, allowed to endure physical and

emotional pain,  physical injury of stimulus issue, scarring, sufferings that has triggered other health issues.  I believe I am entitled

to relief for:  Allowing undue pain and sufferings in violation of the US 8th Constitutional amendmant, violating my Civil Rights

adequate Medial care,  Deliberate Indifference to a serious medical need, resulting in personal injury from the stimulus issue ( Ecz

but also the additional phsyical injuries of High Blood pressure, SVT , but now loss of future  economic , future medical care.

I believe I should be entitled to:

A-Non Economic recoverings ( For future Medical care-treatments, which could include any surgeries I may need )

B-Compensatory damages to compensate for pain and sufferings endured

C-Compensatory damages for physical injuries (Eczema )

D-Compensatory damages for triggered additionas physical injuried: High Blood pressure and SVT's

E-Examplary damages for being refused treatment in times of need

F-Punitive damages for having to suffer for so many years,

| 2/28/20 | Florence Walsh |
|---|---|
| _(Date)_ | _(Signature of Plaintiff)_ |

Name: FLORENCE WALKER

Address: 29910 Rancho Cali Rd

#306, TEMECULA - CA 92511

Phone: 619-431-3153

Email: florence.walker@yahoo.com
Fax:

In Pro Per se

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CASE NUMBER:

FLORENCE WALKER

                              Plaintiff

STATE of CALIF et all (Dos 1-10)
CDCR - (Dos 2-10

                              Defendant(s).

Civil Action:
PERSONAL Injury

( Enter document title in the space provided above)

Plaintiff in a civil Action For PERSONAL
injuries received in 2016 while incarcerated
by the California dept. of Corrections & Rehab
herein known as (C.D.C.R), being housed
at the central California For Women herein
known as CCWF (2006-2014) and housed
at California Institution For Women herein
known as CIW (2014-2019), plaintiff had
Serious physical injuries, requiring 7 days
of Wound-care. This incident was related
to delay in receiving Medical care, refusal
to treat, Negligence, directly. Simple pit

1

Page Number

It Was "Deliberate indifference To a Serious medical Need. The Time frame of this incident occurred between July 6, 2016 Thru July 26, 2016. The stimulus Issue is Eczema the plaintiff received the blunt end of Neglectful conduct in : unneccessary delay To treatment ( CC §1714) To requests to be seen by her Doctor (PCP), Teiage deficiency in refusal to Acknowledge onset of an Eczema episode (flare up) as a serious medical Need. (cc-Labor 3208.1), failure of Nursing staff To summon Medical Care - Refused To notify Doctor - Cal Code - Gov §846.6 Disregard foe plaintiff safety, knowing or should have known of plaintiffs documented heart issues. Violating Standard of Care owed To plaintiff ( Cal-BPC § 2234). Medical and/or Proffessional Negligence - Cal Code - 340.5 (2), Covering a 20 day Time span, Negligences that falls Under these Category : CC - BPC §2234 (b) gross Negligence, (c) - repeated Negligent acts/omissions Malpractice, Nurses making decisions as to Awhether A patient Needs To be seen by a Doctor. This behavior, is granted them in the C.D.C.R - CCR- Title 15 Section 3354(e) State of California Authority, implemented in the C.D.C.R - (D.O.M) Dept. operations Manual

which gives rise to this Malpractice Situation.
That the State of California was well aware
of issues being complained of in the area
of Medical care, seeing that as early as
(2007), the State knew they were violating
prisoners Rights in Medical Care. And that
the State of California, C.D.C.R – C/o Kimberly
Cole, Dr. F. Herendosia, MTA-RN & Williams,
RN-S. Carr, LVN-Salas, Dr. R-Liu, Dr.
Marakonde and Issachar, owed a duty
to plaintiff in respect to Adequate Medical
Care by operation of Statutory Rights
under Gov't Code – §815.6, CCR – Title-15
section. Prompt, proper as well as
adequate Medical Care.
And that All these defendants violated
plaintiff Rights, Caused plaintiff physical
injuries, pain and suffering from
Negligent acts but also is the proximate
Cause of 2 additional health injuries:
1- High blood pressure. 2- Supra Ventricle
tachy Cardia (SVT), and in so refusing
to treat, unnecessary delay in Medical
care has caused plaintiff much pain,
suffering and is the direct cause of
plaintiff's failing health.

Therefore plaintiff files this Civil Action as a result of:
Medical Malpractice, Negligence, Unnecessary delay to Medical care, disregards to safety, Violating standard of care, Refused to treat failure to summon Medical care, Medical Negligence, Physical Negligence, Professional Negligence, breach of obligation, Deliberate indifference to Serious Medical Need, Civil Rights Action - Medical Care, and US-8th Constitutional amendment violation.

Plaintiff is seeking Non-Economic damages Economic damages for Compensatory, Exemplary and Punitive damages

Respectfully, Submitted

On: February 25, 2021

Ms. Florence Walk

# Civil Complaint Case
## Statement of Claim

4  Florence Walker - plaintiff
5          vs
6  State of California et All (Dos: 1-10)
7  Calif Dept. of Corrections - Rehab (C.DCR)
8  (Dos: 2-10)

## Statement of Claim
### Personal Injury

13  State of California
14     Principles Responsible for agents
15     Negligence or Omission   CC-CIV 82238

18  Article III, Section 5, - State of Calif Constitution
19  "Any person who is A resident of or doing
20  business in the state of California shall have
21  Standing to sue the State of California to
22  enforce this section, and the Courts of
23  Record of the State of California shall have
24  jurisdiction to hear cases brought to
25  enforce this Section."
26
27  The C.DCR is an agency of the State
28  of California, which operates the

  State Agencies  Set Location  Contact Us  Translate  Settings

       

Home Getting Services  Doing Business  Working  Learning  Living  Visiting  Government  Search



# California Department of Corrections and Rehabilitation (CDCR)

The California Department of Corrections and Rehabilitation is responsible for the operation of the California state prison and parole systems. We enhance public safety through safe and secure incarceration of offenders, effective parole supervision, and rehabilitative strategies to successfully reintegrate offenders into our communities.

 Website     Contact

General Information: 916-324-6919

  

Facility Locator

Locate a California Prison inmate



Case 5:21-cv-00419-JFW-kk     Document 1     Filed 03/08/21     Page 13 of 29     Page ID
3/1/2021                    Adult Institutions, Programs and Parole Regulations - Regulations and Policy - CDCR
                                              #a:118

# Adult Institutions, Programs and Parole Regulations

## Regulation and Policy Management Branch

The Regulation and Policy Management Branch (RPMB) is responsible for managing the development, revision, and adoption of regulations related to Adult Institutions, Programs and Parole. Any proposed departmental policy with regulatory impact must be adopted through a Rulemaking Process (https://oal.ca.gov/rulemaking_process/) that meets the requirements of the Administrative Procedure Act (APA) (https://oal.ca.gov/publications/administrative_procedure_act/). The regulations must be clear, consistent, necessary, have authority in law, and not duplicate or conflict with existing regulations or other provisions of law. Working closely with the respective programs, RPMB ensures the Department rules are announced, adopted and published in the California Code of Regulations, Title 15, Division 3, Chapter 1.

Current Department regulations governing adult prison and parole operations are available through the following links:

- (https://www.cdcr.ca.gov/wp-content/uploads/sites/171/2019/06/title15_2018-1.pdf)California Code of Regulations, Title 15, Division 3, Chapter 1 (https://govt.westlaw.com/calregs/Browse/Home/California/CaliforniaCodeofRegulations?

guid=IB4B82C70D47311DEBC02831C6D6C108E&originationContext=documenttoc&transitionType=Default&contextData=(sc.Default)&bhcp=1)

- Pending changes to Department Regulations (https://www.cdcr.ca.gov/regulations/adult-operations/pending-changes-to-department-rules-2/)

- Recently adopted Department Regulations (https://www.cdcr.ca.gov/regulations/adult-operations/new-rules-page/)

- Appendices (https://www.cdcr.ca.gov/regulations/adult-operations/dom-appendices/)

- Authorized pilot programs (https://www.cdcr.ca.gov/regulations/adult-operations/authorized-pilot-programs/)

# Public Participation

The RPMB is responsible for notifying the public regarding the amendment and adoption of regulations proposed by the Department. Anyone may submit written comments regarding the proposed regulations during the announced public comment period. RPMB staff conducts a public hearing to receive comments about the regulations from the public. The merits of the proposed regulations are not debated during these hearings. The place and time of a public hearing is included in the Notice of Change to Regulations for each regulatory action. Comments received from the public during the comment period will be reviewed, summarized and responded to in the Final Statement of Reasons.

The public can submit comments regarding regulation changes in the following ways:

- Mail written comments to:
  **CDCR**
  **Regulation and Policy Management Branch**
  **P.O. Box 942883**
  **Sacramento, CA 94283-0001**

- Comments may be e-mailed to RPMB@cdcr.ca.gov (mailto:rpmb@cdcr.ca.gov)

- Attend the Public Hearing at the time and place announced in the Notice of Change to Regulations.

Adult Institutions, Programs and Parole Regulations - Regulations and Policy - CDCR

# Department Operations Manual

RPMB is also responsible for Department operational policies found in the Department Operations Manual (DOM). These policies can be found in Department Operations Manual (DOM) – Updated from January 1, 2019, to December 31, 2019 (https://www.cdcr.ca.gov/regulations/adult-operations/dom-toc/).

**THOMSON REUTERS**
**WESTLAW**          California Code of Regulations

# California Code of Regulations Help

About the California Code of Regulations Site

CCR FAQ

Technical FAQ

Agency List

Contact Us

California Legal Products

Searching California Code of Regulations

Browsing Documents

## About the California Code of Regulations Site

This California Code of Regulations (CCR) site contains the text of the regulations that have been formally adopted by state agencies, reviewed and approved by the Office of Administrative Law, and filed with the Secretary of State. The CCR consists of 28 titles and contains the regulations of approximately 200 regulatory agencies. Note that Title 6 (Governor's Regulations) presently contains no regulations, and Title 24 (California Building Standards) is published separately and not part of this CCR website (see FAQs for further information). This website is updated weekly.

The Internet CCR is maintained and updated weekly by OAL through a contract with Thomson Reuters / Barclays.

The contract requires that "[t]he Contractor shall ensure that the CCR made available on the Internet is consistent with the most recent updated version of the Official CCR published in hard copy, accurately reflects what is filed with the Secretary of State; and that it is complete and contains all the material defined as part of the official CCR."

For more information on how to use this site, please click on the Help link located in the upper right corner of each page.

The Official California Code of Regulations is available in looseleaf printed format from Thomson Reuters / Barclays (1-800-888-3600).

A certified copy of a regulation filing may be obtained from the Secretary of State Archives (916-653-7715).

is consistent with the most recent updated version of the Official CCR published in hard copy, accurately reflects what is filed with the Secretary of State; and that it is complete and contains all the material defined as part of the official CCR."

For more information on how to use this site, please click on the <u>Help</u> link located in the upper right corner of each page.

The Official California Code of Regulations is available in looseleaf printed format from Thomson Reuters / Barclays (1-800-888-3600).

A certified copy of a regulation filing may be obtained from the Secretary of State Archives (916-653-7715).

<u>Back to Top</u>

## CCR FAQ

### About the regulations

- What is a regulation?
  A regulation is a rule adopted by a state regulatory agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.

- Do regulations have the same effect as laws?
  Yes. Legally adopted regulations filed with the Secretary of State have the force of law.

- What would happen if I did not comply with regulations that apply to me?
  You could be cited, fined or suffer other adverse consequences (such as losing a license) if you fail to comply with regulations that apply to you.

- What is the difference between a regulation and a statute?
  A regulation is adopted by a state regulatory agency, approved by OAL, and filed with the Secretary of State. A statute is passed by the Legislature and signed by the Governor (or is approved by the voters as a ballot measure).

- By what authority can an agency adopt regulations?
  A regulatory agency receives its power to adopt laws from statutes. This authority is cited at the end of each regulation.

- Where can I find a hard copy of the regulations?
  The CCR is available at the offices of County Clerks or County Law Libraries and 100 state depository libraries. It is available in looseleaf form from the official publisher, Thomson Reuters / Barclays. For information about obtaining the official CCR in print, contact Barclays at 1-800-888-3600 or visit them online at <u>http://www.barclaysccr.com</u>.

  Certified copies of regulations are available at the State Archives in the Office of the Secretary of State (916) 653-7715.

- Why is Title 24 (the California Building Standards) not included as part of this CCR Website?
  Title 24 of the California Code of Regulations, known as California Building Standards, contains copyrighted materials under the ownership of several model code publishers and cannot be provided here. The eleven parts of Title 24 that comprise California's Building Standards are

## About the Rulemaking Process

- Do agencies have to adhere to guidelines when adopting regulations?
  Yes, agencies are to follow the procedures set forth in the Administrative Procedure Act.

- What is the Administrative Procedure Act (APA)?
  The APA sets forth the procedures that state agencies must follow when adopting regulations.

  See Government Code section 11340-11359. Among other requirements, it requires state agencies to give public notice, to receive and consider public comments, to submit regulations and rulemaking files to the Office of Administrative Law for review to ensure compliance with the requirements of the APA, and to have the regulations published in the California Code of Regulations.

- Must all agencies comply with the APA?
  The majority of agencies must comply with the APA. However, an agency may be exempt by statute from complying with the procedures in the APA.

- If an agency is to comply with the APA but does not, what is the status of those regulations?
  Such regulations are invalid. They are commonly referred to as "underground regulations."

## About the Office of Administrative Law (OAL)

- What is the Office of Administrative Law?
  In 1979, the Legislature created the Office of Administrative Law (OAL) to ensure that state agency regulations are authorized by statute, consistent with other law, and written in a comprehensible manner, as provided in the rulemaking part of California's Administrative Procedure Act (Sections 11340 through 11359 of the Government Code). Each year, state agencies propose thousands of regulations which, when adopted, affect almost all economic activities and every segment of the California public. In part, the enactment of new statutes and the amendment of laws on the books drive the volume of this regulatory activity. OAL reviews each proposed regulation and approves a regulation only when the rulemaking agency has adequately considered public comments and if the regulation is easily understood, necessary, authorized, and consistent with law. When approved and filed with the Secretary of State, a regulation has the force of law.

  In addition to its regulatory review program, OAL responds to requests for determination regarding whether a state agency rule meets the statutory definition of a "regulation," and if so, whether the rule should have been, but was not, adopted pursuant to the requirements of the Administrative Procedure Act.

<u>Back to Top</u>

## Contact Us

Contact the official publisher with regards to the CCR in print:
     Toll free **1-800-888-3600**

Via Mail:
     **Thomson Reuters / Barclays**
     **P.O. Box 2006**
     **San Francisco, CA 94126**

State's penal Systems. The "Regulation and Policy Management Branch", makes the governing policies in the (D.O.M) Department Operations Manual of the California Dept of Corrections and Rehab (C.D.C.R)

The CDCR creates the rule/Regulation within the California department of Corrections and Rehab ("C.D.C.R) thru the division known as "Regulation and Policy management board" RPmB" and any policy, procedures, Rules or regulation Must be immediately transmitted to the Secretary of the State of California.

Both public Entities have knowledge of any Stipulations in the CCR-Title-15 California Code of Regulations - Title-15

In addition to the fact that they were under the jurisdiction of the 3-Judge panel for Violations amounting to U.S 8th Constitution and Civil Rights to medical Care Violations
Plata V. Brown 563 US 493 (2011)

2

# Statement of Claim

2 - C.D.C.R - Is the governing body within the States penal Systems and has a direct connection with the rules, regulations and policies implemented within the Adult institutions. The office of Regulation and Policy Management branchs, creates the policy and rules in the CCR-Title-15 for All of the State of California prison Systems.

The Accummolations of the issue is with healthcare, came to Acknowledgement by the 3-judge panel as it relates to prisoners healthcare and how the standard of level of healthcare within the States 33 prisons fell well below the minimual level of care that amounted to the US 8th constitutional amendment violations, and also lacked the Adequate Medical care levels.

The State of California, the Department of Corrections (C.D.C.R), and the RPMB officials were completly aware of the issues to which plaintiff is complaining of.

3

In February 2018, SSU culminated a year long operation in conjunction with the Federal Bureau of Investigation, code named "Silent Night." The investigation focused on the Nuestra Familia prison gang and its control over Northern California communities. The investigation centered on the city of Woodland, California and the street gang called "Varrio Bosque Norteno." An arrest sweep of 29 suspects took place on February 14, 2018.[26]

# Current Structure of SSU

The current configuration of the Special Service Unit remains true to its origins—small and mobile. As of 2018, CDCR reports there are only thirty SSU special agents. They are based throughout California in clandestine, off-site locations. Every agent is equipped with tactical and surveillance equipment and is ready to respond anywhere within the state at a moment's notice.

In 2005, CDCR began to consolidate various divisions and units in an effort to realign its organizational structure. During that time the Office of Correctional Safety (OCS) was created, which serves as the "special operations division" for the department. Within the OCS are groups such as the Fugitive Apprehension Team (FAT) and the Emergency Operations Unit (EOU). SSU became a branch of OCS as well, which elevated the training and tactical acumen for all of the special agents. With the merger of the EOU unit with SSU, special agents were responsible for attaining a higher level of tactical firearms proficiency as well as tactical high-risk entry training.

Serving as the "detective unit" for the Department of Corrections, SSU special agents are responsible for keeping current on the latest investigative techniques and current case law. Special agents often work hand-in-hand with law enforcement investigators from all branches of government, city, county and federal. Many SSU agents are assigned to regional task forces throughout California and a handful are cross-designated as federal task force officers with such federal partners as the Drug Enforcement Administration, Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco and Firearms.

# Issues

## Security Threat Groups

## Prison health care

There are at multiple ongoing lawsuits over medical care in the California prison system. *Plata v. Brown* is a federal class action civil rights lawsuit alleging unconstitutionally inadequate medical services, and as a result of a stipulation between the plaintiffs and the state, the court issued an injunction requiring defendants to provide "only the minimum level of medical care required under the Eighth Amendment." However, three years after approving the stipulation as an order of the court, the court conducted an evidentiary hearing that revealed the continued existence of appalling conditions arising from defendants' failure to provide adequate medical care to California inmates. As a result, the court ruled in June 2005 and issued an order on October 3, 2005 putting the CDCR's medical health care delivery system in receivership, citing the "depravity" of the system.[27] In February 2006, the judge appointed Robert Sillen to the position[28] and Sillen was replaced by J. Clark Kelso in January 2008.[29]

California Department of Corrections and Rehabilitation - Wikipedia

...*an v. Brown* is a federal class action civil rights lawsuit alleging unconstitutionally inadequate mental health care, filed on April 23, 1990. On September 13, 1995 the court found the delivery of mental health care violated the Eighth Amendment to the United States Constitution, and issued an order for injunctive relief requiring defendants to develop plans to remedy the constitutional violations under the supervision of a special master.

Following the Governor's issuance of the State of Emergency Proclamation, the plaintiffs in *Plata* and *Coleman* filed motions to convene a three-judge court to limit the prison population. On July 23, 2007 both the *Plata* and *Coleman* courts granted the plaintiff's motions and recommended that the cases be assigned to the same three-judge court.[12] The Chief Judge of the United States Court of Appeals for the Ninth Circuit agreed and, on July 26, 2007, convened the instant three-judge district court pursuant to 28 U.S.C. § 2284 (https://www.law.cornell.edu/uscode/text/28/2284).

As of 2008–09 fiscal year, the state of California spent approximately $16,000 per inmate per year on prison health care.[30] This amount was by far the largest in the country and more than triple the $4,400 spent per inmate in 2001.[31] The state with the second largest prison population in the country, Texas, spent less than $4,000 per inmate per year.[32]

# Prison Escapes

The number of prison escapes from California prisons is not officially published anywhere. However, a 2018 article on the CDCR press release webpage states, "Since 1977, 99 percent of all offenders who have left an adult institution, camp or community-based program without permission have been apprehended."[33] The release goes on to say that the Special Service Unit is the specialized unit tasked with hunting down prison escapees. The article states, "[Its] the primary departmental link with allied law enforcement agencies and the Governor's Office of Emergency Services."[34] A large majority of the escapes occur from the minimum security facilities, such as fire camps. Inmates are also placed back in the community through the Alternative Custody Program (ACP)[35] and will elect to flee and not complete the program. These are also considered prison escapes.

One of the most high profile prison escapes occurred on June 5, 1987 at Folsom State Prison. Inmate Glen Godwin was able to escape the then maximum security prison. He reportedly escaped through a storm drain and into the American River. Godwin has been featured on several television documentaries as well as being on the FBI's Most Wanted List for twenty years. The case is still open and being worked by cold case investigators from SSU.[36]

In August 2014, convicted murderer Scott Landers escaped from the back of a CDCR transport van while on the Interstate 5 freeway just north of Atwater, Calif. Landers had been convicted of the stabbing of a 61-year-old man in Riverside, Calif. and was serving twenty-five years to life. Upon his escape, members of the elite Special Service Unit were called in from across the state to lead the investigation. Within twenty-four hours, the escaped murderer was caught and brought back to CDCR custody.[37]

# Union: California Correctional Peace Officers Association

Officers of the department are represented by the California Correctional Peace Officers Association (the CCPOA). It was founded in 1957 and its stated goals include the protection and safety of officers, and the advocation of laws, funding and policies to improve work operations and protect public safety. The union has had its controversies over the years, including criticism of its large contributions to former California

# Statement of Claim

c/o

**3 =** Kimberly Cole (CCWF-2008 $^{08}/04 - ^{08}/05$
Refused to summon medical, "Deliberate
indifference to a serious medical Need. Shown

**4 -** Dr. F. Hermosia (CCWF) $^{0}/8-05 - ^{08}/06$ (2008)
2 occassions I went to the on-site infirmary
Known As 805-SNF. On both occassions Dr.
Hermosia seen me. On each occassion he was
shown the gaping wound in plaintiff's left
outer hand. The flesh was exposed. It was
oozing puss. He was shown R-foot that was
cracked, swollen. He was shown wound on the
left shin area, the rash had turned into a
open flesh wound.
    He refused to treat plaintiff, refused any
topical ointment to prevent infection. He
refuse to provide any cleasing for wounds.
No bandages or anything for the severe
itching. He also refuse to notify plaintiff
PCP - Cyard physician. Plaintiff was
sent back to unit both times without any
medical care. Defendant is guilty of:
Medical malpractice, Negligence, Professional
Negligence, Disregards for Safety, Refusal to
treat - Deliberate indifference to a serious
medical Need. US 8th Constitution Amendment
Violation, Civil Rights Violation to medical care
Statutory, Regulatory Violation

4

# Statement of Claim

5- R.N. Williams (CCWF) between March 2008-
August 2008. Was seen on three different
Occassions : March
She had direct knowledge of plaintiff's
increasing worsening physical conditions and
yet she provided Minimum care (inadequate)
treatment. She diagnosis the condition as
a Ringworm. She never submitted Request,
to be seen by doctor, to the Appointments
scheduling department.
Negligence, Professional Negligence, "Deliberate
indifferene to a serious Medical Need", failure
to summon Medical care, Malpractice.

6- RN-S. Caser (CIW) July 7, 8 - 2016
At visit plaintiff informed S. Caser, that
She was beginning to have a Eczema flare-up
and needed to see her PCP in order to
be seen by Dermatologist to get the shot
( Kejlon) in order to stop the Acute. onset
of the flare-up. S. Caser diagnosis the condition
As not needing further medical Attention. She
re-ordered 1- tube of Teiamcinolone ointment
and told plaintiff, if (rash) condition got worse
to submit another Sick-Call Request CDCR-7362
form. She refused to send Request to be seen
by PCP. "failure to summon Medical care"
inadequate Medical care, Negligence, Malpractice

5

# Statement of Claim

1  "Deliberate indifference to a Serious medical
2  Need" Violation of Standard of Care, Statutory
3  and Regulatory Violation, US 8th Constitutional
4  Amendment Violation, Civil Rights Violation to
5  Medical Care

7  7- LVN. SALAS - (CIW) July 9, 2016
8
9  She triaged me as Non-Urgent, even though
10 the request I submitted had it written in
11 big letters at the top "URGENT", she
12 noted that I'd been seen by S. Carr on 7/7-8
13 and that Carr had re-ordered the topical
14 ointment treamincolone, which was not having
15 an impact on the Eczema issue. I told her
16 that I needed to get the shot (Keflon) that
17 the dermatologist would order once I'd be
18 seen by him. But I Needed to see Dr. Bedford
19 just to order an Appt with the Telemed
20 Dermatologist. She said "This is not urgent,
21 you have the ointment, Use it and Submit
22 another Copay 7362 form in 7 days if the
23 condition gets worst. She said, I don't Need
24 to see the doctor" Malpractice, professional Noly-
25 Negligence, failure to Summon medical Care,
26 "Deliberate Indifference to a Serious Medical
27 Need" disregards for Safety, Statutory, Regulatory
28 US 8th Constitution Violation, Civil Rights Violation

6

Statement of Claim

8- Dr. R. Liu (CIW) between 7/14-7/15
7/21 - 7/25 She refused to attend to me at
the on-site hospital (TTA).
Malpractice, Negligence Professional Negligence
"Deliberate indifference to a serious medical
Need" US 8th Constitution Amendment Violation
Civil Rights Violation to Medical Care, Statutory,
Regulatory Violation

9- Dr. Maraкonda (CIW) March|April-2017
Refused to provide the (Kellon) shot when
plaintiff indicated that a previous shot
had worn off and that plaintiff was beginning
to experience another Eczema flare-up,
and a much needed benedeyl shot for the
severe itching.
Professional Negligence, disregard for
Safety, Statutory, Regulatory Violations,
Civil Rights Violation to medical care.

10- Issachar — (CIW) 07/29 2016
Threaten to have plaintiff removed from
wound-care, because she (plaintiff) answered
a question.
Harrassment

7

# Statement of Claim

1. Each of the Aforemention (Dos 3-10) had
2. direct contact with plaintiff and first
3. hand Knowledge of the problems, physical
4. Impairment, physical injuries that
5. plaintiff was suffering in pain and anguish.
6. The CDCR-7362, sick-call Requests (Co pay)
7. forms serves to notify medical staff of
8. an issue the inmate is having.
9. The procedure (not discovered by plaintiff)
10. until 2016 is a policy protocol in the
11. State of California and California Dept of
12. Corrections and Rehab (C.D.C.R), which
13. directs the medical staff on how to operate
14. within the healthcare community Model.
15. This procedure specifically allows for
16. the Nursing staff (Triage) to make pre-
17. determinations on inmates health issues
18. and then the Nurse decides if the inmate
19. should be seen by a Doctor. This is practicing
20. Medicine without a Physician license -
21. Malpractice.
22. The C.D.C.R. has implemented this procedure
23. through the policy process (which is of the
24. Regulation and Policy Management board (RPMB)
25. The Rules and Regulations authorized are
26. also supplied to the State of California,
27. Secretary, Director and Dept Director.
28. State of Calif, C.D.C.R know of these policies

8

Statement of Claim

Plaintiff seeks relief in the following Area:

1- Compensatory for physical injuries pain and Suffering at the hands of the defendants:
Per defendants : $250,000, — each
= $2,500,000 —

Non-Economic damages for future Medical care. All future Medical Procedures and or Surgeries
$250,000.00 per defendant
= $2,500,000 —

2-Exemplary damages: = $25,000,000 for causing additional Health injuries
Namely: High Blood pressure.
Supra-Ventricle Tachy cardia

3-Loss of future Economic earnings
$2,400,000 —

4-Punitive Damage — $20,000,000

Respectfully Submitted

On February 28, 2021    Ms. Theresa Wait

9

Florence
29910 Rancho California Rd
Temecula, Ca 92591

7020 1810 0001 4116 2178

CERTIFIED MAIL

CLERK, U.S. DISTRICT COURT
MAR - 8 2021
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY DEPUTY

Clerk of The Court
U.S. District Court -
Eastern Division Riverside
3470 Twelfth St.
Riverside, Ca 92501-3801




U.S. POSTAGE PAID
TEMECULA, CA
92591
MAR 04, 21
AMOUNT
$8.85
R2304M111380-24
